350    APPELLATE COURTS OF ILLINOIS.

Chicago Manual Training School Assn. v. Scott, 159 Ill. App. 350.

---

**Chicago Manual Training School Association, Appellee, v. Ingvard M. Scott, Appellant.**

### Gen. No. 15,406.

1. PARENT AND CHILD—*liability of step-father.* If a man takes the children of his wife by a former marriage into his family he stands *in loco parentis* as to them and becomes bound by his wife's contract made for their maintenance and education.

2. HUSBAND AND WIFE—*effect of section 15 of act of March 30, 1874, upon liability of step-fathers.* Section 15 of the act of March 30, 1874, "To revise the law in relation to husband and wife," providing that the expenses of the family and of the education of the children shall be chargeable upon the property of both husband and wife, or of either of them, in favor of creditors therefor, and that in relation thereto they may be sued jointly or separately, does not change the liability of the step-father from that laid down by the common law.

Action commenced before justice of the peace. Appeal from the Circuit Court of Cook county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the March term, 1909. Affirmed. Opinion filed January 3, 1911.

BENJAMIN LEVERING, for appellant.

CHARLES SCRIBNER EATON, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

In this case judgment was rendered by the Circuit Court of Cook county October 10, 1908, against the

defendant, appellant here, in favor of the plaintiff, appellee here, for $150.14. The judgment was for the tuition of one Edward Maguire at the Chicago Manual Training School (owned and conducted by the appellee corporation) for the school year beginning about September 1, 1901, and ending at the summer vacation in 1902.

Edward Maguire was the stepson of the defendant, Ingvard M. Scott. The tuition was charged at $110. It is not claimed that this amount was an unreasonable one for the tuition furnished, but it was claimed in the lower court and is here claimed, that the defendant is not liable for it, and that even if he is, no interest should have been added, as it was, to the $110.

The cause was submitted to a jury under certain instructions of the court hereafter noted, both as to the liability of defendant and as to allowing interest on the original charge for tuition. The verdict was for the plaintiff and assessed the damages at $150.14. A new trial was denied and judgment was thereupon given for that amount.

Edward Maguire was the son of Henry E. Maguire and his wife, who, prior to 1897, was Vivian M. Maguire. In that year she procured a divorce from Henry E. Maguire and by the decree was granted the "care, custody, control and education" of Edward Maguire. Shortly thereafter she married the defendant and became Vivian M. Scott. After that time, up to and beyond the time for which the tuition claimed in this case was given to Edward Maguire, the defendant, Mrs. Scott, and Edward Maguire lived together, Mr. and Mrs. Scott kept house at 943 Wabansia avenue in Chicago, and there Edward Maguire lived with them. In 1897 Edward Maguire was thirteen years old (according to his testimony as to his age given in 1908), and was attending a public grammar school in the city of Chicago. In 1899 he was taken by his mother, Mrs. Scott, to the Chicago Manual Training School and there remained a pupil until June, 1902. His tui-

352    APPELLATE COURTS OF ILLINOIS.

Chicago Manual Training School Assn. v. Scott, 159 Ill. App. 350.

tion was paid up to the term which began in September, 1901. Mrs. Scott testified that the money which paid that tuition was given to her for that purpose by the boy's father, Henry E. Maguire, who wanted his son to be educated at the Manual Training School. As to the third year, however, Mrs. Scott testified: "I was unable to pay the schooling, and I sent a note to Mr. Belfield so that the boy could continue school. His father asked me to, saying he would pay it, but in the meantime he took sick and died and that is why the other schooling was not paid."

The note referred to in this testimony is one signed by Vivian M. Scott alone, by which, under date of January 23, 1903, she promised to pay to the order of the Chicago Manual Training Association $110 four months after date. The note was not paid. Demands were made for payment from her alone apparently, until the suit at bar was brought before a justice of the peace in July, 1906, by the plaintiff against both Ingvard Scott (the appellant here) and Vivian M. Scott. The justice gave judgment against both for $132, and Ingvard M. Scott alone appealed to the Circuit Court. A rule on him to file a transcript was obtained in September, 1906. An appeal summons was taken out by appellee and served on Vivian. M. Scott, but on the case being called for trial in the Circuit Court, the appellee discontinued the suit against Vivian M. Scott and surrendered the note in the court "to have it marked cancelled."

The case was submitted to a jury under instructions of the court, the essential doctrines of which were: First. That the giving of the note should not be regarded by the jury as payment or as a defense to the action if the defendant was otherwise liable, unless they held that the defendant had proven that the note had been given and received as absolute payment of the indebtedness. Second. That if Edward Maguire was a member of the defendant's family and held out by the defendant to the world as such, the

defendant was to be considered as voluntarily assuming the relation of parent to said Edward Maguire, and if defendant knew that the said Edward Maguire had been placed by his mother, the defendant's wife, at the plaintiff's school, and made no opposition thereto, and if the plaintiff had furnished him an education suitable to his social position at a reasonable charge, then the plaintiff was entitled to recover the unpaid portion of said charge from the defendant, although the law would have allowed the defendant to refuse to provide for said Edward Maguire and to refuse to take him into his family, and although if he had not taken said Maguire into his family and stood towards him in the relation of a parent, he would not have been liable for such charge. Third. That if the plaintiff had made repeated efforts to collect the amount claimed to be due the plaintiff from the defendant, and the defendant had unreasonably and vexatiously delayed payment of the same, interest should be allowed on the sum found to be due from the time that it became due. Fourth. That it was for the jury, from the evidence, to decide the questions of fact involved in these preceding propositions.

The jury found for the plaintiff and added interest to the charge of $110, making up the amount to that for which judgment was given, $150.14. A new trial was afterward denied. This appeal followed.

A motion to instruct the jury for the defendant, made both at the close of the plaintiff's case and at the conclusion of all the evidence, was overruled, and it is of the essence of the appellant's complaint here that this was error, although he also claims that a new trial should have been granted because the verdict was against the weight of the evidence, and that the verdict was excessive in that it added interest unwarrantably.

It is to be noted that it is not specifically assigned for error that the instructions given were erroneous,

nor that those refused (except the peremptory one) were improperly refused. The denial of a new trial is the only matter complained of in the assignments which involves the instructions. It is, however, argued in the appellant's brief that the doctrine concerning a stepfather's liability was incorrectly laid down by the judge of the trial court, in that "it is not the law that taking a child into his home and admitting it in a qualified way into the family renders a stepfather liable for his necessaries and education, but that to accomplish that result the child must be so admitted into the family as to create the relation of parent and child."

We do not think the instructions as given were wrong or misleading in this regard. The common law doctrine has perhaps never been better stated, after all, than by Lord Kenyon in 1799, in Stone v. Carr, 3 Espinasse 1, when he said that if a man took the children of his wife by a former marriage into his family, he *did* then stand *in loco parentis* as to them, and was bound by his wife's contracts made for their maintenance and education.

By comparison of this case with Tubb v. Harrison, 4 Dunford and East. 118, from which Lord Kenyon distinguishes it, it can be seen clearly that the test applied by Lord Kenyon to the question of the stepfather's liability, is the one applied by the lower court in the case below.

And we think that the common law rule, thus declared, is supported by subsequent cases outside of Illinois and by text writers of authority. Mulhern v. McDavitt, 16 Allen 404; Williams v. Hutchinson, 3 Comstock 312; Eckhoff v. S. W. & S. W. R. R. Co., 106 Mo. App. 541; Lantz v. Frey, 14 Pa. St. 201; St. Ferdinand Loretto Academy v. Bobbs, 52 Mo. 357; 2 Kent's Commentaries 192; 29 Cyc. 1667.

In Academy v. Bobbs (*supra*) an instruction in the exact language of the first instruction of the court below in the case at bar was approved by the Supreme

Court of Missouri. And we do not think that the cases in Illinois which touch on this question are inconsistent with this early declared doctrine of the common law. For example: Brush v. Blanchard, 18 Ill. 47; Mowbry v. Mowbry, 64 Ill. 378.

The cases which treat of rights of a step-parent against the property of step-children for compensation for support, or of rights of step-children against stepparents for compensation for services, are not, however, much in point where the question is between such step-parent and third parties furnishing necessaries or education to the step-children.

Section 15 of the Act of March 30, 1874, "To revise the law in relation to husband and wife," providing that the expenses of the family and of the education of the children shall be chargeable upon the property of both husband and wife, or of either of them, in favor of creditors therefor, and that in relation thereto they may be sued jointly or separately, does not change the liability of the stepfather from that laid down by the common law, but the cases decided under it strengthen, so far as they have any effect, the case of the plaintiff here. For the test of whether there was a "family" under the meaning of the statute has been made the living together of husband and wife, or of husband, wife and children, and holding themselves out as one family. This is especially true of the decisions of the Appellate Courts of Illinois. See, for example: Cole v. Bentley, 26 Ill. App. 260; Hoyle v. Warfield, 28 Ill. App. 628; Arnold v. Keil, 81 Ill. App. 237; and Featherstone v. Chapin, 93 Ill. App. 223.

The present case differs in its facts from those of which the cases heretofore cited treat, in that it involves the education of the child of a woman previously divorced, whose natural father lived for some time after the divorce and for a time provided for the boy pecuniarily, although he was not a member of his natural father's family. Perhaps on that ac-

count it is, as appellee's counsel in his brief suggests, peculiarly interesting to an increasing class of persons, but we cannot see that the legal question is changed or complicated by this situation.

The jury were left to decide on the fact of the family relation under what we think were correct instructions as to the law.

The appellant, however, contends that the verdict was without support in the evidence, or at least contrary to its weight, even if the instructions are to be considered as correctly stating the law. With this proposition we do not agree. We shall not discuss the evidence. We have considered it and do not hold the verdict plainly against its weight by any means.

As to the interest, the question may be somewhat doubtful, but we think, under all the circumstances, the jury may have been justified in allowing it, and that the instruction was not so erroneous or misleading as to justify reversal.

The judgment of the Circuit Court is affirmed.

*Affirmed.*